## Richmond

### EVELYN ADAMS SMITH

### v.

### FIELDCREST MILLS, INC.

September 9, 1982.

Record No. 810733.

Present: All the Justices.

*Edwin A. Gendron, Jr. (Gendron & Kirby,* on brief), for appellant.

*M. Kenneth Doss [N.C.] (Robert W. Mann; Young, Haskins, Mann, Gregory & Young, P.C.,* on brief), for appellee.

*Amicus Curiae: Dan River, Inc. (Michael P. Regan; James A. Harper, Jr.; Gregory B. Robertson; Hunton & Williams,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

This workmen's compensation case involves the claim of Evelyn Adams Smith against Fieldcrest Mills, Inc., for an award based upon disability allegedly resulting from the disease of byssinosis, a respiratory ailment caused by exposure to cotton dust. The Industrial Commission dismissed the claim.

The record shows that Mrs. Smith has been employed by Fieldcrest in a Henry County towel mill for more than thirty-four years. During most of that time, she worked in the yarn preparation department, located at one end of "a great big room." Al-

though Mrs. Smith's activity produced no significant amount of cotton dust, she testified that she constantly was exposed to large quantities of dust generated by the receiving, carding, and spinning operations conducted in other parts of the room.

In 1971, Mrs. Smith began experiencing chest tightness, shortness of breath, and fatigue. Annually thereafter, the medical department of Fieldcrest performed pulmonary function tests upon Mrs. Smith; the results showed she suffered reduced lung capacity. In 1979, at Fieldcrest's request, Mrs. Smith was examined by Dr. T. R. Harris. He reported that she had "significant obstructive lung disease which is most likely both byssinosis and emphysema." The doctor noted that Mrs. Smith had been a smoker for a number of years, but that she had stopped and had not smoked for "5 months."

In May, 1980, Mrs. Smith was examined by Dr. Herbert Saltzman, a physician of her own choice. He reported that Mrs. Smith had "severe chronic obstructive pulmonary disease" and that "[e]mphysema and chronic bronchitis are the evident causes for [this] disease." He said that he interpreted byssinosis "to be a more likely than not etiologic factor in the evolution of chronic bronchitis," but that "[c]igarette smoking may be a relative causative factor." The doctor evaluated Mrs. Smith as having "Class III AMA respiratory ailment—35% whole body," and he interpreted "half of this impairment to reflect byssinosis."

In a deposition submitted to the Commission, Dr. Saltzman reiterated his diagnosis that Mrs. Smith suffered from both byssinosis and emphysema. He distinguished the two diseases by saying that byssinosis causes obstruction of the airways of the lungs, while emphysema causes actual loss of lung tissue. The doctor stated further that emphysema and chronic bronchitis are common diseases, but that, because byssinosis requires "exposure to cotton dust . . . in cotton textile mills," it is not a disease suffered by the general public.

Upon examination by Fieldcrest's counsel, Dr. Saltzman conceded that he did not know "the level of cotton dust" to which Mrs. Smith had been exposed and that he had used "only her subjective description" of her exposure in making his diagnosis. When asked by Fieldcrest's counsel whether "all of Mrs. Smith's problems could have been caused by the cigarette smoking," Dr. Saltzman answered affirmatively. However, the doctor immedi-

ately reasserted his belief that "chronic byssinosis is a . . . significant component of [Mrs. Smith's] pulmonary problem."

Mrs. Smith filed her claim under Code § 65.1-56(20), which reads:

> § *65.1-56. Cases in which incapacity shall be deemed to continue for periods specified in section; compensation.*—In cases included by the following schedule the incapacity in each case shall be deemed to continue for the period specified and the compensation so paid for such injury shall be as specified therein and shall be in lieu of all other compensation . . . .
>
> \* \* \* \*
>
> (20) For the pneumoconiosis, including but not limited to silicosis, asbestosis, coal miner's pneumoconiosis and byssinosis, medically determined to be in the:
>
> \* \* \* \*
>
> (c) Third stage, sixty-six and two-thirds percent of the average weekly wages during 300 weeks. [\*].

Dr. Saltzman rated Mrs. Smith's byssinosis at "stage 3" on the Schilling Index. The doctor admitted this index is a "crude classification," but he said it is the only rating "specifically related to byssinosis." He explained that "Class 3 refers to the irreversible impairment" phase of the disease.

In its written opinion, the Commission stated Mrs. Smith had the burden of proving that she had contracted an occupational disease and that the disease was caused by her employment. The Commission then wrote: "If it is just as probable that [Mrs. Smith's condition] resulted from a non-compensable cause (smoking) as that it resulted from a compensable cause (cotton dust exposure), the claim must fail."

Continuing, the Commission said it was "readily apparent that [Doctors Harris and Saltzman] have found that this claimant suf-

---

\* An *amicus* brief filed by Dan River Inc. in support of Fieldcrest contains the remarkable statement that "[b]yssinosis is not one of the compensable diseases contemplated by the legislature in Section 65.1-56(20)." The term "byssinosis," *amicus* states, "was inserted into Section 65.1-56(20) . . . under the mistaken assumption that it was 'a pneumoconiosis similar to silicosis, asbestosis and coal miner's pneumoconiosis.'" It is now "well settled," *amicus* asserts, that "so called 'byssinosis' is *not* a pneumoconiosis like asbestosis or silicosis." We suggest *amicus* direct these observations to the General Assembly.

fers with . . . byssinosis and also suffers from emphysema and bronchitis all of which are causing the claimant discomfort and disability." The Commission observed, however, that the physicians' diagnosis of byssinosis was made solely upon the "history given by the person involved" and "without any first-hand knowledge as to the extent of [Mrs. Smith's] exposure to cotton dust."

The Commission stated further that Mrs. Smith was "suffering apparently from two conditions and perhaps three, one of which is not job related in any form or fashion (emphysema)." The Commission then held that Mrs. Smith must prove her "disabling condition . . . is *solely* the result of her employment [and that she had failed to] so prove" (emphasis added). Accordingly, the Commission dismissed Mrs. Smith's claim.

From a reading of the Commission's opinion, we are uncertain of the basis for its decision. We are unable to determine whether the Commission dismissed Mrs. Smith's claim because (1) it found that she does not suffer from byssinosis, or (2) it found that she does suffer from byssinosis but that the disease is not the sole cause of her disability.

We recently considered a nearly identical situation. In *Bergmann v. L & W Drywall*, 222 Va. 30, 278 S.E.2d 801 (1981), the claimant strained his back at work, disabling him from performing his duties as a drywall hanger. Following this injury, the claimant was stricken with a non-occupational neurological disorder. When the employer sought to terminate compensation benefits, the Commission ordered the submission of additional medical evidence. This evidence consisted of a report from a neurologist stating that the claimant suffered from "a neurological disability caused by both his injury and the non-job-related illness" and a report from an orthopedist stating that the claimant did not have "an orthopedic disability." *Id.* at 32, 278 S.E.2d at 802.

Relying upon the "just as probable" rule, the Commission dismissed the claim. We reversed, stating that the Commission had "confused two rules of law, combining them into one erroneous statement." *Id.* The first, or "just as probable," rule, we said, means merely that "a claimant must prove his case by a preponderance of the evidence"; the second, or "two causes," rule "refers to the case where a disability has two causes: one related to the employment and one unrelated." *Id.*, 278 S.E.2d at 803. Under the second rule, we stated, full benefits will be allowed when it is

shown that "the employment is a *contributing* factor to the disability." *Id.* (Emphasis added.)

It was unclear, we continued, whether the Commission held the claimant's disability was not work-related or if it "erroneously denied him benefits for a disability that had both a work-related and a personal cause." Because of this "confusion," we remanded the case so the parties could have "the opportunity to present additional evidence and arguments." *Id.*

We believe the same course should be followed here. Aided by such additional evidence and arguments as the parties may submit, the Commission should decide (1) whether Mrs. Smith suffers from byssinosis, and (2) if so, whether the disease is a contributing factor to her disability.

■ If the Commission decides these inquiries favorably to Mrs. Smith, it must then determine whether she has staged her disease according to Code § 65.1-56(20)(c). In this connection, we note the criticism leveled at the Schilling Index by Fieldcrest. Essentially, Fieldcrest complains that, because byssinosis is undetectable by X ray, the Schilling Index does not conform to Commission guidelines requiring radiographic findings in lung disease cases.

The Commission stated, however, that, because it is impossible to determine the presence of byssinosis by radiographic findings, Commission-set guidelines "cannot take precedence over . . . § 65.1-56 which contains no guidelines." We agree. It follows that Mrs. Smith took the proper approach in attempting to stage her disease with reference to the Schilling Index. The record shows that, although the Index is a "crude classification," it is the only scientific scale "specifically related to byssinosis." In the hearing upon remand, the Commission shall permit Mrs. Smith to rely upon the Index as an appropriate staging guide.

For the reasons assigned, we will reverse the Commission's award and remand the case for further proceedings not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*