COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Baker, Benton, Coleman,
     Willis, Elder, Bray, Fitzpatrick, Annunziata and
          Overton
Argued at Richmond, Virginia


LEADBETTER, INC.
 AND PENNSYLVANIA MANUFACTURERS
 INDEMNITY INSURANCE COMPANY                OPINION BY
                                     JUDGE JAMES W. BENTON, JR.
v.  Record No. 1457-94-2               DECEMBER 19, 1995

BENJAMIN PENKALSKI


                 UPON REHEARING EN BANC

      FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          S. Vernon Priddy, III (Jennifer G. Marwitz;
          Sands, Anderson, Marks & Miller, on brief),
          for appellants.

          Malcolm Parks, III (Susan Elaine Sieger;
          Maloney, Barr & Huennekens, on brief),
          for appellee.



     Leadbetter, Inc. and its insurer appeal from the

commission's award of temporary total disability benefits to

Benjamin Penkalski.  Leadbetter contends the commission erred in

(1) failing to apply the rule of American Furniture Co. v. Doane,

230 Va. 39, 334 S.E.2d 548 (1985), (2) applying the "two causes

rule" in awarding temporary total benefits, (3) concluding that

Penkalski's work-related injury by accident partially caused his

inability to perform light duty work, (4) finding that any amount

of partial disability attributable to the injury by accident

supports the award because it contributes to Penkalski's

temporary total disability, (5) finding that part of Penkalski's

loss of earning capacity is attributable to the compensable

injury by accident, and (6) ruling that Penkalski had no obligation to market his residual work capacity. A panel of this Court, with one judge dissenting, reversed the commission's award. See Leadbetter, Inc. v. Penkalski, 20 Va. App. 454, 457 S.E.2d 790 (1995). This Court granted Penkalski's petition for a rehearing en banc. For the reasons that follow, we affirm the commission's award.

The parties stipulated many facts of this case and generally do not dispute the material facts. Viewed in the light most favorable to Penkalski, who prevailed before the commission, see R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990), the evidence proved that in April 1991 Penkalski fell and broke both ankles while employed by Leadbetter. His injuries required surgery and other rehabilitation. Pursuant to a memorandum of agreement, Penkalski received an award for temporary total disability benefits.

Under the treatment of Dr. E. Claiborne Irby, Jr., the attending physician, Penkalski made progress and was able to walk following surgery. His rehabilitation after surgery involved exercising his ankles daily as directed by Dr. Irby. With Dr. Irby's permission, Penkalski began performing restricted light duty selective work for Leadbetter in September 1991. Throughout 1991 and 1992, Dr. Irby reported that Penkalski continued to experience swelling, aching, and discomfort. The doctor ordered him to continue daily stretching and other ankle exercises. In

addition, Dr. Irby reported that Penkalski suffered a 30% permanent partial loss of function of the left leg and a 20% loss of function of the right leg. The commission awarded Penkalski 87.5 weeks of permanent partial disability benefits for the loss of function of the legs.

As of December 10, 1992, Penkalski was performing restrictive light duty selective work for Leadbetter within the limitations outlined by his doctor. On December 11, 1992, Penkalski suffered a heart attack. Following Penkalski's heart attack, another doctor performed an angioplasty. During that procedure, arterial plaque was loosened and settled in Penkalski's toes and feet and caused injury to his toes and feet. Penkalski suffered ischemia of his feet and lost additional function of his feet as a consequence of his ischemia. The heart attack, the ischemia of the feet, and the treatment for those conditions were not a result of Penkalski's compensable accident and were not work related. However, Penkalski was still disabled by his ankle injuries when he had the heart attack, and he had received orders from Dr. Irby to regularly exercise his ankles.

Further complications from the loosened arterial plaque resulted in the amputation of parts of Penkalski's toes. Confined to a wheelchair by the heart attack and the resulting complications, Penkalski could no longer perform the exercises prescribed by Dr. Irby. The condition of his ankles deteriorated, increasing his disability.

In September 1993, both Dr. Irby and Dr. John T. Funai reported that Penkalski was totally disabled. Dr. Irby found the total disability resulted from "two causes, one of which is work related and one which is not." Dr. Funai opined that "the combination of [Penkalski's] cardiac condition and the potential loss of a foot prohibits any future employment." Since April 9, 1991, Penkalski has been incapacitated at all times, has been unable to perform the full range of his pre-injury duties, and has suffered chronic pain and swelling in his ankles.

Penkalski's entitlement to permanent partial disability benefits ended September 30, 1993. Because he received no additional disability benefits from Leadbetter, Penkalski filed a change in condition application for benefits. Based upon Dr. Irby's reports, the deputy commissioner found that the evidence proved that Penkalski's "disability has two causes, one related to employment and one not related." Relying on decisions from the Supreme Court and this Court, the deputy commissioner entered an award in favor of Penkalski. On review, the commission affirmed the deputy commissioner's award.

An employee is entitled to recover compensation for an aggravation or exacerbation of a compensable injury by accident even when the event that caused the aggravation or exacerbation did not involve the workplace. Fairfax Hospital v. DeLaFleur, 221 Va. 406, 409, 270 S.E.2d 720, 722 (1980). See also Wilson v. Workers' Compensation Comm'r, 328 S.E.2d 485, 489 (W. Va. 1984);

- 4 -

1 Arthur Larson, The Law of Workmen's Compensation, §§ 13.00–13.24 (1994).  "It is well established that where . . . the chain of causation from the original industrial injury to the condition for which compensation is sought is direct, and not interrupted by any intervening cause attributable to the [employee's] own intentional conduct, then the subsequent [condition] should be compensable."  American Smelting & Refining Co. v. Industrial Comm'n, 544 P.2d 1133, 1135 (Ariz. Ct. App. 1976).  See also Department of Highways v. McCoy, 193 S.W.2d 410, 412 (Ky. 1946) (an employee who suffered a work-related hernia was entitled to receive compensation for an aggravation of the hernia caused by the inability to operate due to a subsequently developed unrelated onset of tuberculosis).  Recovery of compensation for a subsequent aggravation is barred only if the subsequent aggravation "is the result of an independent intervening cause attributable to [the employee's] own intentional conduct."  1 Larson, supra, § 13.00.  Numerous courts have recognized this principle with factual variations "but as long as the causal connection is in fact present the compensability of the subsequent condition is beyond question."  Id. § 13.11(b) (footnote omitted).

Another well-established principle holds that "where a disability has two causes:  one related to the employment and one unrelated [to the employment] . . . full benefits will be allowed."  Bergmann v. L & W Drywall, 222 Va. 30, 32, 278 S.E.2d

- 5 -

801, 803 (1981).  This principle requires the commission to award compensation because "the employment is a contributing factor to the disability."  Id.; see also Smith v. Fieldcrest Mills, Inc., 224 Va. 24, 28-29, 294 S.E.2d 805, 807-08 (1982).  These two principles intersect in this case and mandate an affirmance of the commission's decision.

Dr. Irby reported that complications resulting from the heart operation caused Penkalski to suffer foot and toe problems.  The severity of those problems prevented Penkalski from exercising his ankles and resulted in a marked decrease in his ankle motion.  Thus, the condition of Penkalski's ankles deteriorated.  As a consequence, Dr. Irby initially barred him from "doing any job where he has to do prolonged standing or walking due to his ankles."  In September 1993, Dr. Irby reported that Penkalski was totally disabled from any employment as a result of his work-related injury and the exacerbation of that injury.  Based upon Dr. Irby's reports, the commission found that Penkalski's foot ischemia exacerbated and worsened his work-related ankle disability.  In addition, the commission found that Penkalski was totally disabled.  This Court must defer to the commission's findings because they are based on Dr. Irby's reports and other credible evidence in the record.  See Rose v. Red's Hitch & Trailer Servs., Inc., 11 Va. App. 55, 60, 396 S.E.2d 392, 395 (1990).

American Furniture Co. v. Doane, 230 Va. 39, 334 S.E.2d 548

(1985), is not an impediment to upholding the award.  In <u>Doane</u>,
the employee suffered a work-related injury to her back.  After
the employee had surgery and recovered, the attending physician
released the employee to return to light duty work.  <u>Id.</u> at 41,
334 S.E.2d at 549-50.  The employee failed to report for light
duty work because of impairments to her hand and arm that were
"unrelated" to the back injury.  <u>Id.</u>  The two conditions were
"unrelated" because they neither flowed from the same work-
related cause nor resulted in disability to the same body member.
 Thus, the Court held that "Doane failed to carry her burden of
persuasion to show the necessary causal connection between her
arm impairment and her compensable injury."  <u>Id.</u> at 43, 334
S.E.2d at 550-51.

In <u>Eppling v. Schultz Dining Programs</u>, 18 Va. App. 125, 442
S.E.2d 219 (1994), this Court applied <u>Doane</u> in a case where an
employee was terminated because of excessive absences caused by
health problems that were "unrelated" to her work-related injury.
 <u>Id.</u> at 128, 442 S.E.2d at 221.  No evidence in that case proved
that Eppling's "unrelated" problem had exacerbated or aggravated
the work-related injury.

Dr. Irby's report clearly states the relationship between
the complications that resulted from the heart attack and the
work-related injury.  The evidence proved that after the arterial
plaque settled in his feet and caused complications, Penkalski
could not perform the ankle exercises previously prescribed for

him by Dr. Irby and he suffered additional disability. Thus, the commission had a medical basis upon which to conclude that as a result of Penkalski's heart attack, Penkalski suffered severe injuries to his feet, was unable to continue his exercises, and lost significant and additional motion in his injured ankles. Dr. Irby's report stated that Penkalski was "disabled from any work that requires prolonged standing and walking." He further reported that the disability resulted from two causes, "one is work-related and one is not." In addition, the commission specifically quoted from Dr. Irby's May 27, 1993, report in finding that Penkalski had proved that the non-work-related condition contributed to and aggravated his compensable injury.

When, as in this case, the medical evidence proved that the work-related disability was aggravated or exacerbated by the non-work-related problem, the resulting disability is compensable. Bergmann, 222 Va. at 32, 278 S.E.2d at 803. Furthermore, Dr. Irby's medical opinion established that Penkalski's inability to perform sustained standing and walking was a disability that had two causes. One cause was the worsening condition of Penkalski's ankles, the work-related injury.

Leadbetter has failed to show the commission committed error. Credible evidence supports the commission's finding that Penkalski's total disability is due in part to his work-related injury. The medical evidence supports the award of temporary total disability. Therefore, we affirm the commission's decision

and vacate the prior panel decision.

<u>Affirmed</u>.