COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Powell and Alston
Argued at Chesapeake, Virginia


DOMINION VIRGINIA POWER AND
 DOMINION RESOURCES, INC.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1896-09-1              CHIEF JUDGE WALTER S. FELTON, JR.
                                                         MARCH 23, 2010
VIRGINIA WHITNEY GREENE


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Angela F. Gibbs (Arthur T. Aylward; Midkiff, Muncie, and Ross,
          P.C., on brief), for appellants.

          Karen M. Rye (Law Office of Karen M. Rye, on brief), for appellee.


     Dominion Virginia Power and Dominion Resources, Inc. (collectively "employer")

appeal a decision of the Workers' Compensation Commission ("commission") awarding Virginia

Whitney Greene ("claimant") temporary total disability benefits based on a change in condition

to a previously determined compensable injury.  Employer contends the commission erred in

finding claimant experienced a change in condition related to her previous compensable back

injury, and in awarding her temporary total disability benefits.  It asserts that the doctrines of res

judicata and collateral estoppel, as well as claimant's failure to timely cure her unjustified refusal

of selective employment, bar her present claim.  Employer also argues that the commission erred

in finding that claimant had reached maximum medical improvement, and in assigning a ten

percent permanent partial disability rating to each of her legs.  For the following reasons, we affirm

the commission's decision.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  BACKGROUND

On appeal from a decision of the commission, we review the evidence, and all reasonable inferences that may be drawn from that evidence, in the light most favorable to the party prevailing below, here, claimant.  Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83, 608 S.E.2d 512, 517 (2005) (en banc).  We are bound by the factual findings of the commission, so long as they are supported by credible evidence in the record.  Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993).

It is uncontroverted that claimant, who was fifty years old at the time, suffered a compensable injury to her spine on May 9, 2003 while working as a stockroom worker for employer.  The commission awarded her medical benefits pursuant to Code § 65.2-603, and temporary total disability benefits beginning August 1, 2004.

On September 30, 2005, claimant underwent a Functional Capacity Evaluation.  That evaluation resulted in a finding that claimant could perform "medium physical demand level work."  Subsequent to the Functional Capacity Evaluation, claimant's treating physician, Dr. Kirven, a board certified orthopedic and spinal surgeon, approved her for light-duty work as a cosmetologist.  Claimant accepted a cosmetologist position procured for her by employer's vocational rehabilitation consultant.  She left that job on the first day of training, August 20, 2006, asserting that she was in too much pain to complete the tasks assigned.  She has not been employed since that date.  By opinion dated July 11, 2007, a deputy commissioner found that claimant unjustifiably refused selective employment, and terminated the commission's award of temporary total disability benefits effective August 29, 2006.  On October 26, 2007, the full commission affirmed.

On February 28, 2008, claimant filed a claim alleging a change in condition as of December 17, 2007.  On November 12, 2008, a deputy commissioner found that claimant

experienced a change in condition between August 20, 2006 and December 17, 2007, and awarded her temporary total disability benefits beginning December 17, 2007 and continuing. The deputy commissioner also found that claimant had reached maximum medical improvement, and assigned a ten percent permanent partial disability rating to each of her lower extremities. The full commission affirmed the deputy commissioner's decision. This appeal followed.

## II.  ANALYSIS

### A.  Change in Condition

Employer contends the commission erred in finding that, between August 20, 2006 and December 17, 2007, claimant experienced a change in condition to her previous compensable injury.

Code § 65.2-101 defines a "change in condition" as "a change in physical condition of the employee as well as any change in the conditions under which compensation was awarded, suspended, or terminated which would affect the right to, amount of, or duration of compensation."

Medical records show that, prior to claimant's August 20, 2006 unjustified refusal of selective employment, Dr. Kirven, claimant's treating physician, approved her employment as a cosmetologist. Thereafter, following his October 6, 2006 examination of claimant, Dr. Kirven opined that she was "disabled secondary to her symptomatology." Dr. Kirven's January 12, 2007 examination notes indicate that claimant was "medically disabled from work secondary to her back and leg pain." Subsequent medical records through December 17, 2007 reflect Dr. Kirven's opinion that claimant was disabled from all employment.

The commission found that Dr. Kirven's medical opinion, regarding claimant's ability to work, changed between August 20, 2006 and December 17, 2007, based on his periodic examination of claimant. See Mace v. Merchants Delivery Moving & Storage, 221 Va. 401, 404-05, 270 S.E.2d 717, 719-20 (1980) (change in condition is not limited to changes in employee's

physical condition, but also allows consideration of change in attending physician's opinion as to whether employee has ability to resume work).  Based on the record before us, we conclude the commission did not err in finding that claimant's ability to work changed between August 20, 2006 and December 17, 2007.  The record demonstrates that, while Dr. Kirven initially opined that claimant could work within stated physical limitations, he subsequently determined that she could not work at all.[1]

## B.  Disability Award

### 1.  Temporary Total Disability

Employer also contends the commission erred in awarding claimant temporary total disability benefits beginning December 17, 2007 and continuing.  It argues that the record lacks sufficient medical evidence to support a finding of temporary total disability.

---

[1] Employer also argues that the doctrines of res judicata and collateral estoppel, as well as claimant's failure to timely cure her prior unjustified refusal of selective employment, bar her present claim for temporary total disability benefits beginning December 17, 2007 and continuing. It argues that, because claimant failed to assert her change in condition during the course of her prior litigation in 2007 (related to employer's assertion she unjustifiably refused selective employment), she is now barred from claiming a change in condition in this litigation.  We conclude that the doctrine of res judicata does not bar claimant's present claim.  Neither the remedy sought (temporary total disability benefits) nor the cause of action (change in condition) in this proceeding were the same as those before the commission on October 26, 2007 (termination of disability benefits based on unjustified refusal of selective employment).  See Smith v. Ware, 244 Va. 374, 376, 421 S.E.2d 444, 445 (1992) (defining res judicata).  We also conclude that the doctrine of collateral estoppel does not apply to bar claimant's application for temporary total disability benefits "[b]ecause the periods of disability claimed are not the same, and because the medical evidence relied on for the more recent claims is different from that relied on for the earlier claims where different periods of disability were at issue . . . ." Allegheny Airlines, Inc. v. Merillat, 14 Va. App. 341, 344, 416 S.E.2d 467, 469 (1992).  Finally, we conclude that claimant's failure to cure her unjustified refusal of selective employment does not bar her change-in-condition application.  See Southwest Va. Tire, Inc. v. Bryant, 31 Va. App. 655, 659-60, 525 S.E.2d 563, 565 (2000) (unjustified refusal of selective employment "does not have any bearing upon a change-in-condition application for an employee who becomes totally disabled as a result of the industrial injury, except to the extent that it may later affect whether a subsequent claim for partial disability is barred").

"[T]he function of the appellate court, when reviewing the sufficiency of the evidence, is to determine whether there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved." Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222, 372 S.E.2d 411, 415 (1988). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). "In its role as fact finder, the commission was entitled to weigh the medical evidence." Ogden Aviation Servs. v. Saghy, 32 Va. App. 89, 101, 526 S.E.2d 756, 762 (2000). "This Court must defer to the commission's findings [of fact when] they are based on [the treating physician's] reports and other credible evidence in the record." Leadbetter, Inc. v. Penkalski, 21 Va. App. 427, 433, 464 S.E.2d 554, 557 (1995) (en banc).

Dr. Kirven testified that in his expert opinion, based on a reasonable degree of medical certainty, claimant had become totally disabled as a result of her May 9, 2003 work-related injury. Medical records show that Dr. Kirven performed a sensory exam on claimant's lower extremities each time he examined her from August 2006 through December 17, 2007. He found that she had decreased sensation, initially in her left leg, then in both legs. Claimant reported numbness and a dull ache in both legs during that time period, symptoms her medical records reflect had previously been confined primarily to her left leg. The medical evidence also shows that claimant experienced intermittent increased pain levels in her lower extremities during the period in question.[2]

In August 2008 at employer's request, Dr. Carlson, an orthopedic surgeon, performed an independent medical examination of claimant. After examining claimant and reviewing her prior

---

[2] Although claimant's reported pain level was a 5 on a scale of 1 to 10 at her August 9, 2006 and December 17, 2007 examinations, she reported a pain level of 6 on May 25, 2007, a pain level of 7 on September 5, 2007, and a pain level of 7 on October 26, 2007. During that time period, Dr. Kirven prescribed several different pain medications in an attempt to alleviate claimant's pain.

medical records, Dr. Carlson opined that there was no objective medical evidence to support claimant's total disability claim. He reported that, in his opinion, the best measure of claimant's ability to work was her September 30, 2005 Functional Capacity Evaluation, which "does not allow her to perform her pre-injury work but would certainly allow her to perform significant work at this time, including the physical demand of occasionally lifting 40 pounds with no limitations otherwise."

At his September 3, 2008 deposition, Dr. Kirven was shown a copy of Dr. Carlson's report to review. Dr. Kirven, a board certified orthopedic and spinal surgeon, disagreed with Dr. Carlson's assessment of claimant's condition and work capacity. He noted that Dr. Carlson failed to perform a sensory examination of claimant's lower extremities, an examination routinely performed by spinal surgeons. Dr. Kirven testified that his sensory examination of claimant's lower extremities provided the basis for his conclusion that claimant was totally disabled from all employment. He also testified that claimant suffered from a progressively degenerative condition, as evidenced by 2003 and 2006 MRI exams, and that claimant's subjective symptomatology was consistent with that progression.

The commission accepted Dr. Kirven's testimony and found claimant to be temporarily totally disabled. See Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989) ("Questions raised by conflicting medical opinions must be decided by the commission."); Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986) (noting treating physician's opinion should weigh heavily against conflicting evidence). Based on this record, we conclude the commission did not err in awarding temporary total disability benefits to claimant beginning December 17, 2007 and continuing.

## 2. Maximum Medical Improvement

Employer also argues that the commission erred in finding that claimant had reached maximum medical improvement because Dr. Kirven testified that she would "eventually need surgery." Dr. Kirven stated:

> She's at MMI [maximum medical improvement] until something else happens, which she's going to need surgery. I mean, she's at MMI as far as good as she's going to get at this point, but she has a progressive condition. So, to me, MMI is a relatively -- a relative point, so to speak. It's more of an insurance point than a medical point. . . . Well, hopefully, [surgery] will take away some pain. She's going to be in pain forever whether she gets surgery or not, but surgery is not the end-it-all thing for her. She will still have . . . pretty significant pain from this condition.

He further testified, "I don't think she needs any surgery at the moment. She's not ready for surgery, in my opinion. But in the event that when surgery does come about, she will need a decompression and fusion." Relying on County of Spotsylvania v. Hart, 218 Va. 565, 238 S.E.2d 813 (1977), employer asserts that the possibility of future treatment negates the possibility of a determination of maximum medical improvement. We disagree. In Hart, the injured employee died before a medical determination could be made as to whether surgery would have benefited his condition. Id. at 570, 238 S.E.2d at 816.

Here, both Dr. Kirven and Dr. Carlson opined that claimant was at maximum medical improvement and that surgery was not recommended at that time. Dr. Kirven opined that claimant would likely need surgery at some point in the future as her condition worsened, but that such surgery would not restore her to her pre-injury condition and may have little to no effect. Given the uncontradicted expert medical opinion testimony of both Dr. Kirven and Dr. Carlson that claimant had reached maximum medical improvement, we conclude the commission did not err in finding that she had reached maximum medical improvement.

3. Permanent Partial Disability Rating to Lower Extremities

Employer also contends the commission erred in assigning a permanent partial disability rating of ten percent to each of claimant's legs. It argues that Dr. Carlson's opinion, that claimant's condition did not warrant a permanent partial disability rating in her legs, was more "consistent with reason and justice." Employer asserts that claimant's medical records show that she consistently complained that her left leg was worse than her right leg.[3]

In determining whether permanent partial disability benefits should be awarded, "the commission must rate 'the percentage of incapacity suffered by the employee' based on the evidence presented." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991) (quoting Hart, 218 Va. at 568, 238 S.E.2d at 815).

Dr. Kirven testified that claimant suffered from lower extremity bilateral radiculopathy as noted in his December 17, 2007 examination report. He testified that his expert medical opinion, to a reasonable degree of medical certainty, was that claimant had a ten percent permanent partial disability in each of her lower extremities. He stated that he based that expert opinion on his examinations of claimant and the American Medical Association Guides to the Evaluation of Permanent Impairment, Fifth Edition. He also testified that he disagreed with Dr. Carlson's assessment of claimant's leg impairment, particularly noting that Dr. Carlson had not performed a sensory examination as part of his disability assessment.

The commission accepted Dr. Kirven's assessment of the impairment of claimant's lower extremities and rejected that of Dr. Carlson. See Penley, 8 Va. App. at 318, 381 S.E.2d at 236; Pilot

---

[3] Employer also argues that Dr. Kirven's medical opinion regarding claimant's leg impairment was based on incomplete medical history. It asserts that Dr. Kirven was unaware that claimant sustained a right knee fracture fourteen years prior to her compensable workplace injury. However, claimant testified that she was unsure whether she had informed Dr. Kirven about her prior knee injury. Dr. Kirven was never asked about claimant's prior right knee injury, and no evidence was introduced as to what effect, if any, the prior right knee fracture might have on claimant's current condition.

Freight Carriers, 1 Va. App. at 439, 339 S.E.2d at 572. "By statute, the commission's factual findings are conclusive and binding on this Court when those findings are based on credible evidence." City of Waynesboro v. Griffin, 51 Va. App. 308, 312, 657 S.E.2d 782, 784 (2008) (citing Code § 65.2-706).

Based on the record presented, we conclude the commission did not err in awarding permanent partial disability benefits based on a ten percent impairment rating for each of claimant's legs.

## III.  CONCLUSION

For the foregoing reasons, we affirm the award of the commission, finding that claimant experienced a change in condition between August 2006 and December 17, 2007 related to a compensable injury to her back, awarding her temporary total disability benefits beginning December 17, 2007 and continuing, and assigning a ten percent permanent partial disability rating to each of her legs.

Affirmed.